**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

———————————————————
                                   :

TRINA M. SMITH,                :
                                    :

        Plaintiff         :           Civil Action No. 04-5936 (FLW)
                                    :

        v.                    :          **MEMORANDUM OPINION**
                                    :

JO ANNE B. BARNHART      :
COMMISSIONER OF SOCIAL    :
SECURITY,                :
                                    :

        Defendant      :
———————————————————:

**WOLFSON, United States District Judge**

     Plaintiff Trina M. Smith ("Plaintiff") appeals from the final decision of the Commissioner of Social Security, Jo Ann Barnhart, denying her disability benefits.  The Court has jurisdiction to hear this matter pursuant to 42 U.S.C. § 404 (g).

     Plaintiff contends that the record, when considered in full, completely substantiates her claims and requires a conclusion that she is disabled and, thus, entitled to benefits.  Specifically, Plaintiff maintains that Irving A. Pianin, the Administrative Law Judge ("ALJ"), erred by: (1) failing to properly determine Plaintiff's residual functional capacity; (2) relying on vocational expert testimony that was based upon a flawed hypothetical question; and (3) relying on flawed vocational expert testimony and an opinion which violated Social Security Ruling ("SSR")00-4p.  In addition, Plaintiff maintains that the administrative record provides a sufficient basis for this

Court to award summary judgment in her favor.  For the reasons stated below, the decision of the

ALJ is affirmed and Plaintiff's complaint is dismissed in its entirety.


I.      **BACKGROUND**

Plaintiff, a 50 year-old-woman with a high school education and a certificate in

computers from Mercy College, alleges that she has been disabled since March 19, 2001.[1]  Pl.

Br. at 2-3.  From August 2000, until the onset of her disability, Plaintiff had been working as a

customer service representative and voucher intake technician at VCAK/New Jersey Cares for

Kids, Burlington County's Community Action Program.  Administrative Record ("AR") 39, 103.

At VCAK, Plaintiff's responsibilities consisted of managing approximately 300 cases and

handling payments for day care services.  Id.  Plaintiff's job involved sitting, standing and

carrying files to and from her desk.  Id. at 39-40.  Plaintiff alleges that she became disabled as a

result of packing and moving her files and file cabinets when her office moved from Mt. Holly to

Willingboro.  Id.  After the week-long move, Plaintiff contends that she could no longer turn her

neck or move parts of her body.  Id.  Plaintiff has not worked since March 23, 2001.  Id. at 41.  In

addition, Plaintiff alleges that she has lost weight and suffers from depression because of her

ailments.  Id. at 38, 46.  Prior to her job at VCAK, Plaintiff worked as a transportation customer

service representative for Office Max from October 1995 through 2000, and as a school secretary

from 1992 through 1995.  Id. at 103.

---

[1] The Court notes that the Administrative Record in this action is replete with date discrepancies.  In her brief, Plaintiff alleges that she last worked on March 23, 2001, the end of the week during which her office moved. AR 39; Pl. Br. at 3.  However, in her Application for Disability Insurance Benefits, Plaintiff claims that she became unable to work on March 19, 2001, the beginning of the week of the move.  AR 82.  The Court finds that this discrepancy is inconsequential and will therefore consider March 19, 2001 as the onset date of disability, as discussed by the ALJ.

### A. Procedural History

On January 22, 2002, Plaintiff filed an application for disability insurance benefits, under Title II of the Social Security Act (the "Act") and for Supplemental Security Income ("SSI") under Title XVI of the Act alleging disability beginning on March 19, 2001. Id. at 220-21. On May 10, 2002, Plaintiff's initial application was denied. Plaintiff's application was denied upon reconsideration on February 6, 2003. Id. at 224-26, 230-32. Following the denial of her application, Plaintiff timely requested a hearing before an ALJ. Id. at 76. The hearing was held on February 3, 2004, before Irving A. Pianin, ALJ. Id. at 30-32. On March 9, 2004, the ALJ found that Plaintiff met the nondisability requirements for a Period of Disability and Disability Insurance Benefits as set forth in Section 216(i) of the Social Security Act and was insured for benefits through December 31, 2006. Id. at 27. However, the ALJ also determined that Plaintiff was not disabled under the Social Security Act and issued an opinion holding that Plaintiff was ineligible to receive Disability Insurance Benefits and SSI payments. Id. at 14-16. On March 16, 2004, Plaintiff filed a Request for Review by the Appeals Council. Id. at 12-13. Thereafter, on October 27, 2004, the Appeals Council denied Plaintiff's Request for Review, id. at 7-9, and Plaintiff instituted the instant appeal, seeking reversal of the Commissioner's decision and a determination that she is disabled and entitled to disability benefits.

### B.   Medical Evidence

Plaintiff alleges that she became disabled during the week of March 19, 2001, as a result of activities related to packing and moving her office a new location. Id. at 40. Since that time,

Plaintiff has complained of severe back and neck pain that sometimes radiates to her hips and lower extremities  Id.  Recently, Plaintiff has been treating her ailments with over-the-counter medicines because her health insurance expired in early 2005.  Pl. Br. at 4.  At the time Plaintiff's brief was submitted, Plaintiff was awaiting notice of charity care at Cooper Hospital. Id.

On March 20, 2001, Plaintiff saw Albert A. Talone, D.O., for the first time and complained that she had been suffering from low back pain for four days[2]. AR 157.  Dr. Talone noted that Plaintiff had a history of low back pain and prescribed wet compresses, Ultram for pain and Skelaxin for muscle spasms.  Id.  On March 26, 2001, Plaintiff saw Dr. Talone again at which time he gave Plaintiff a shoulder immobilizer to relieve her pain and recommended that Plaintiff rest at home for two weeks.  Id. at 158.  On April 9, 2001, Plaintiff underwent an MRI which showed that Plaintiff had a herniated disc and a bulging annulus.  Id. 160-62.  Plaintiff returned to Dr. Talone on April 24, 2001, and alleged that she was depressed and that she had decreased range of motion in her neck.  Id. at 158.  Dr. Talone prescribed Neurontin for Plaintiff and suggested that she follow up with Dr. Dela Rosa, a physiatrist, and Dr. Lomazow, a neurologist.  Id.  Dr. Talone has not seen Plaintiff since April 2001.[3]

Pursuant to Dr. Talone's reference, Plaintiff saw Steven M. Lomazow, M.D., on May 3,

[2] The Court notes that although Plaintiff complained to Dr. Talone that she had been suffering for four days at her March 20, 2001 appointment, this is not consistent with the alleged onset date of disability of March 19, 2001. The Court will assume that Plaintiff saw Dr. Talone four days after her pain began, which may or may not have been March 20, 2001.

[3] Because Dr. Talone had not seen plaintiff since 2001, he was unable to comment on Plaintiff's condition pursuant to an April 2002 request by the Division of Disability Determination Services ("DDS").  AR153-54, 158. However, in response to the DDS request, Dr. Talone provided an x-ray performed on May 24, 2000, which showed that Plaintiff's vertebral bodies were normally aligned and that her lumbar spine was normal.  Id. at 164.

2001.  Id. at 148.  Dr. Lomazow noted that although Plaintiff was experiencing some tenderness and spasm in her neck, there was no atrophy or evidence of cord impingement.  Id.  Moreover, Dr. Lomazow noted that her treatment would be conservative until further follow up.  Id. 148-49.

On May 8, 2001, Plaintiff saw Aurora P. Dela Rosa, M.D., pursuant to Dr. Talone's recommendation.  Id. at 151.  Dr. Dela Rosa diagnosed Plaintiff with acute neck and shoulder pain, myofascial pain dysfunction and left carpal tunnel syndrome.  Id. at 152.  However, Dr. Dela Rosa also noted that Plaintiff "rated her neck pain as 50% improved."  Id. at 152.  In addition to physical therapy and a recommendation that Plaintiff avoid over the shoulder activity, Dr. Dela Rosa also recommended an Electromyogram ("EMG") study of Plaintiff's left cervical and left upper limb for possible radiculopathy and or left carpal tunnel syndrome.  Id.  As a result of Dr. Dela Rosa's recommendation, Plaintiff returned to Dr. Lomazow on May 10, 2001 for an EMG, which was "essentially normal."  Id. at 144.  In addition, Dr. Lomazow recommended that Plaintiff continue with the conservative management for her pain and symptoms and prescribed Vioxx, as well as a physical therapy and a therapeutic exercise program.  Id.

On March 7, 2002, Plaintiff was seen by Arthur I. Marks, D.O., a state Agency Physician at the Department of Labor, for an orthopedic consultative evaluation.  Id. at 183.  Dr. Marks observed and examined Plaintiff and found that she suffered from a herniated cervical disc, a lesion in the spinal canal, weight loss, undetermined stomach symptoms and Raynaud's phenomenon in her right hand.  Id. at 184.  Dr. Marks performed an x-ray and found that it was "normal except for lordotic straightening."  Id. at 185.  Dr. Marks also looked at Plaintiff's MRI and noted a disc herniation and a "large extradural defect", however, Dr. Marks admitted that he was not trained to read MRIs.  Id.  Morever,  although Dr. Marks found that Plaintiff's motion

was limited, particularly in the cervical spine and when side bending, id. at 184, Dr. Marks

determined that the motion in Plaintiff's shoulders, elbows, hands and wrists was normal.  Id.

Finally, Dr. Marks reported that Plaintiff's grip strength was normal in both hands and that she

could walk at a reasonable pace.  Id. at 188-89.  At that time, Dr. Marks referred Plaintiff for a

medical work-up and neurosurgical consultation.  Id. at 185-86.

On May 7, 2002, Plaintiff underwent a Physical Residual Functional Capacity ("RFC")

Almost a year later, on December 4, 2002, Plaintiff saw Dr. Hassan Zakavhe for an

independent medical examination.  Id. at 209-10.  Plaintiff told Dr. Zakavhe that she continued to

experience back pain which sometimes radiated from her back to her hips.  Id.  After performing

an independent examination of Plaintiff, including an x-ray, Dr. Zakavhe concluded that the

"physical findings could not justify subjective pain."  Id.  Moreover, Dr. Zakavhe found that

Plaintiff's pinch and grasp were normal, her deep reflexes were normal and that she had full

range of motion in her hips and knees.   Id.

On May 7, 2002, Plaintiff underwent a Physical Residual Functional Capacity ("RFC")

evaluation which indicated that during a typical workday, Plaintiff could lift and/or carry 20

pounds occasionally and 10 pounds frequently, and that Plaintiff could stand and walk about 6

hours in an eight-hour workday and sit for about 6 hours in an eight-hour workday, with normal

breaks.  Pl's Let. July 18, 2005, Ex. 7F.[4]  These findings would permit Plaintiff to perform a

restricted range of light work.  AR 21.  On February 3, 2003, Plaintiff's Physical RFC was

---

[4] Although Plaintiff requests that this Court not consider this exhibit because it was not included in the
Administrative Record submitted to this Court, the ALJ clearly had a copy of this medical evaluation and relied upon
it as evidenced by the ALJ's decision.  AR 20.  Thus, this Court will consider the RFC in order to properly analyze
the ALJ's findings and Plaintiff's claim that her RFC was improperly determined.  Moreover, despite Plaintiff's
allegation that the report was completed by an "unidentifiable person", Pl's Let. July 18, 2005, the document was, in
fact, signed by Dr. Joseph Udomseph.  Id., Ex. 7F at p.8.  Furthermore, Plaintiff clearly had the opportunity to
review this record as the document itself was submitted to the Court by Plaintiff upon this Court's request.  See id.

reviewed by Mary McLarnon, M.D., a medical consultant, who noted that while there were discrepancies between Plaintiff's December 2002 physical examination and earlier reports, the Plaintiff's condition may have improved over time.  Id. at 212-13.  Moreover, Dr. McLarnon concluded that "[n]o current treating physician physical examinations are in file to support claimant and witness allegations of severe constant neck and hand pain."  Id.  at 213.  Dr. McLarnon ultimately agreed with the DDS findings that Plaintiff was not disabled and that this conclusion is reasonable and supported by evidence in the file. Id. at 212-13.

> ### C.    Mental Health Evidence

In addition to seeking medical help for her back and neck pain, Plaintiff also sought the help of mental health professionals for her depression.  On February 5, 2002, Plaintiff saw Dr. Friedman, Ph.D., a State Disability Determinations Service ("DDS") physician, who completed a Psychiatric Review Technique Form ("RTF").  Id. at 169-82, 196-208.  In the resulting report, Dr. Friedman found that although Plaintiff suffered from depression, it was an impairment that did not meet the diagnostic criteria.  Id. at 172.  Dr. Friedman reported that Plaintiff was mildly limited in performing daily activities and in maintaining concentration, persistence and pace, and that she was moderately limited in maintaining social functioning.  Id. at 179.

On August 12, 2002, Plaintiff was seen by another psychologist, Dr. Anthony L. Giordano, Ph.D.  Id. at 190-94.  Dr. Giordano diagnosed Plaintiff with Major Depressive Disorder and recommended that she see a physician to treat her back ailment and to secure a prescription for her pain.  Id. at 193.  In addition, Dr. Giordano reported that Plaintiff exhibited "no evidence of any thought disorder, no hallucinations or delusions" and that he found her "general fund of information was appropriate to experience."  Id. at 192.  Moreover, Plaintiff told

Dr. Giordano that although she had difficulty sleeping, she was able to dress, bathe and groom herself and that she was able to do house work although she experienced pain when doing these activities.  Id. at 192-93.  Dr. Giordano reported that the "overall examination was consistent with the claimant's allegations."  Id. at 193.

Dr. Friedman completed a second Psychiatric RTF on August 27, 2002.  Id. at 196-208. Following this review, Dr. Friedman reported that although Plaintiff's depression was now able to be characterized by the diagnostic criteria, id. at 198, Plaintiff's functional limitations had improved since the initial RTF in February.  Id. at 205.  Specifically, in February 2002, Dr. Giordano found that Plaintiff was moderately limited in maintaining social functioning.  Id. However, by August 2002, Dr. Giordano had found that Plaintiff was only mildly limited in maintaining social functioning.  Id.  Dr. Friedman saw Plaintiff for the last time on February 4, 2003, and performed a Mental RFC.  Id. at 214.  At that time, Dr. Friedman reported that Plaintiff was not significantly limited in 15 categories, but was moderately limited in five categories including: the ability to understand and remember detailed instruction; the ability to carry out detailed instructions; the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; the ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes; and the ability to respond appropriately to changes in the work setting.  Id. at 214-15.  Moreover, although Dr. Friedman noted that Plaintiff had been diagnosed as having Major Depressive Disorder, he concluded that "the mental condition of [Plaintiff] would not prevent her from being able to understand, remember and carry out simple instructions, to independently and consistently sustain

concentration, persistence and pace for two hours at a time . . . to interact socially in an appropriate manner in a low contact environment and to adapt to changes in the workplace." Id.


## II.    DISCUSSION

## A.    Standard of review

The Social Security Act ("the Act") provides that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g); Knepp v. Apfel, 204 F.3d 78, 83 (3d Cir. 2000). "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g); see also Matthews v. Apfel, 239 F.3d 589, 592 (3d Cir. 2001). On the issue of whether there is substantial evidence to support a decision, this court's review is "highly deferential." Jones v. Barnhart, 364 F.3d 501, 503 (3d Cir. 2004). However, it is the duty of the court to scrutinize the entire record to determine whether the Commissioner's findings are rational and supported by substantial evidence. See Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978) (emphasis added). Substantial evidence is defined as "more than a mere scintilla," but less than a preponderance. McCrea v. Commissioner of Social Security, 370 F.3d 357, 360 (3d Cir. 2004). "It means such relevant evidence as a reasonable mind might accept as adequate." Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999). Therefore, even if there is contrary evidence in the record that would justify the opposite conclusion, the ALJ's decision will be upheld if it is supported by the evidence. See Simmonds v. Heckler, 807 F.2d 54, 58 (3d Cir. 1986).

**B.      Standard for entitlement of benefits**

Disability insurance benefits may not be paid under the Act unless the plaintiff first meets

the statutory requirements.  See 42 U.S.C. § 423(c).  A plaintiff must demonstrate the "inability

to engage in any substantial gainful activity by reason of any medically determinable physical or

mental impairment which can be expected to result in death or which has lasted or can be

expected to last for a continuous period of not less than twelve months."  42 U.S.C. §

423(d)(1)(A); see Plummer, 186 F.3d at 427.  An individual is not disabled unless "[her] physical

or mental impairment or impairments are of such severity that [she] is not only unable to do [her]

previous work but cannot, considering [her] age, education, and work experience, engage in any

other kind of substantial gainful work which exists in the national economy."  42 U.S.C. §

423(d)(2)(A).

The Act establishes a five-step sequential process for an ALJ's evaluation of whether a

person is disabled.  See 20 C.F.R. § 404.1520.  First, the ALJ determines whether the claimant

has shown that she is not currently engaged in "substantial gainful activity."  20 C.F.R. §

404.1520(a); see Bowen v. Yuckert, 482 U.S. 137, 146-47 n.5 (1987).  A claimant currently

engaged in substantial gainful activity is automatically denied disability benefits.  See 20 C.F.R.

§ 404.1520(b); see also Bowen, 482 U.S. at 140.  Second, the ALJ determines whether the

claimant has demonstrated a "severe impairment" or "combination of impairments" that

significantly limits her physical or mental ability to do basic work activities.  20 C.F.R. §

404.1520(c); see Bowen, 482 U.S. at 146-47 n.5.  Basic work activities relate to "the abilities and

aptitudes necessary to do most jobs."  20 C.F.R. § 404.1521(b).  These activities include physical

functions such as "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or

handling." Id.  A claimant who does not have a severe impairment is not disabled.  20 C.F.R. §
404.1520(c); see Plummer, 186 F.3d at 428.  Third, if the impairment is found to be severe, the
ALJ determines whether the impairment meets or is equal to those impairments listed in the
Impairment List.  20 C.F.R. § 404.1520(a)(4)(iii).  If the claimant demonstrates that her
impairments are equal in severity to or meet those on the Impairment List, the claimant has
satisfied her burden of proof and is automatically entitled to benefits.  See 20 C.F.R. §
404.1520(d); see also Bowen, 482 U.S. at 146-47 n.5.  If the claimant is not conclusively
disabled under the criteria set forth in the Impairment List, step three is not satisfied, and the
claimant must prove at step four whether she retains the residual functional capacity to perform
her past relevant work.  20 C.F.R. §§ 404.1520(d); Bowen, 482 U.S. at 141.  If the claimant is
able to perform her previous work, the claimant is determined not to be disabled.  20 C.F.R. §§
404.1520(e), 416.920(e); Bowen, 482 U.S. at 141-42.  The claimant bears the burden of
demonstrating an inability to return to the past relevant work.  Plummer, 186 F.3d at 428.
Finally, if it is determined that the claimant is no longer able to perform her previous work, the
burden of production then shifts to the Commissioner to show, at step five, that the "claimant is
able to perform work available in the national economy."  Bowen, 482 U.S. at 146-47 n.5;
Plummer, 186 F.3d at 428.  This step requires the ALJ to consider the claimant's residual
functional capacity, age, education and past work experience.  20 C.F.R. § 404.1520(f).  The ALJ
must analyze the cumulative effect of all the claimant's impairments in determining whether the
claimant is capable of performing work and not disabled.  Id.


**C.      Decision and findings of the ALJ**

11

The ALJ determined that although Plaintiff was unable to return to her past relevant work, Plaintiff was able to "make an adjustment to work which exists in significant numbers in the national economy" based on her age, education and work experience.  AR 26.  After consideration of the entire record, the ALJ made the following findings:

1. The claimant meets the nondisability requirement for a Period of Disability and Disability Insurance Benefits set forth in Section 216(I) of the Social Security Act and is insured for benefits through December 31, 2006.

2. The claimant has not engaged in substantial gainful activity since March 19, 2001.

3. The medical evidence establishes that the claimant suffers from depression and a spinal disorder, impairments that are severe but do not meet or equal, alone or in combination, the criteria of any of the impairments listed in Appendix 1, Subpart P, Regulation No. 4. (20 CFR 404.1521 and 416.921).

4. The undersigned finds the claimant's allegations regarding her limitations are not totally credible for reasons set forth in the body of the decision.

5. The claimant retains capacity to perform the exertional and non-exertional demands of light work (20 CFR 404.1567 and 416.967).  Specifically, the claimant has the ability to lift and/or carry twenty pounds occasionally, ten frequently; stand and/or walk for a total of six hours in an eight-hour workday; sit for a total of six hours in an eight-hour workday; climb, balance, kneel, crouch and crawl occasionally; she can engage in occasional cervical flexion and rotation; and she must avoid heights and hazards such as moving machinery.  The claimant's mental condition limits her to simple, routine tasks.

6. The claimant's impairments prevent her from performing her past relevant work.

12

7. The claimant is a "younger individual" with past relevant work as a voucher technician, a transportation customer service representative and a school secretary.  She has a 12th grade education, defined as a "high school education" (20 CFR 404.1563, 404.1564, 404.1565, 416.963, 416.964, and 416.965).

8. Although the claimant's non-exertional limitation do not allow her to perform the full range of light work, using the Medical - Vocational Rules as a framework for decision-making, there are a significant number of jobs in the national economy that she could perform.

9. The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 CFR 404.1520 and 416.920(f)).  AR 27.

On October 27, 2004,when Plaintiff's petition for review to the Appeals Council was denied, the ALJ's decision became the final decision of the Commission .  Id. at 3.


**D.  Plaintiff's Claims on Appeal**

On appeal, Plaintiff contends that (1) the ALJ failed to properly determine her Residual Functional Capacity; (2) the ALJ relied on vocational expert testimony that was based on flawed hypothetical questions; and (3) the Commissioner relied on flawed vocational expert testimony and an opinion which violated Social Security Ruling ("SSR") 00-4p.  Pl. Br. at 8-21.  In addition, Plaintiff argues that the administrative record provides sufficient basis for an award of summary judgment in her favor. Id. at 21-22.


**1. Whether the ALJ Properly Analyzed Plaintiff's Residual Functional Capacity**

Initially, Plaintiff argues that the ALJ erred in determining her residual functional

capacity (RFC), 20 CFR 404.1520(e), under step four of the five-step process.  Pl. Br. at 8-14.

The RFC is used at step four of the sequential evaluation process to determine whether an

individual is able to do past relevant work, and at step five to determine whether an individual is

able to do other work in the national economy considering the claimant's age, education, and

work experience.  SSR 96-8p.  A claimant's RFC is determined by the ALJ using "all the

relevant medical and other evidence" in the claimant's record.  20 CFR 404.1520(e).  According

to the Social Security Administration, "the RFC assessment is a function-by-function assessment

based upon all the relevant evidence of an individual's ability to do work-related activities."

SSR 96-8p.  In other words, the RFC is an administrative assessment of the extent to which an

individual's medically determinable impairment, or combination of impairments, may cause

physical or mental limitations or restrictions that may affect her capacity to do work-related

physical and mental activities on a continuing basis.  Id.

     Plaintiff initially contends that the ALJ did not properly evaluate the medical evidence in

determining her RFC.  Plaintiff alleges that because the record establishes that she suffers from a

herniated disc, neck pain, carpal tunnel syndrome and headaches, the ALJ wrongly determined

that Plaintiff was able to perform light work.  Moreover, Plaintiff argues that the ALJ's decision

did not satisfy the requirements of SSR 96-8p.  According to SSR 96-8p, the RFC assessment

"must include a narrative discussion describing how the evidence supports each conclusion,

citing specific medical facts (e.g. laboratory findings) and non-medical evidence (e.g. daily

activities, observations)...the adjudicator must discuss the individual's ability to perform

sustained work activities in an ordinary work setting on a regular and continuing basis (i.e. 8

hours a day, for 5 days a week, or an equivalent work schedule) and describe the maximum

amount of each work-related activity the individual can perform based on the evidence available in the case record."  Id.  Specifically, Plaintiff contends that because the ALJ did not sufficiently evaluate the Plaintiff's limitations as found by the Agency's physicians including Dr. Friedman, the decision did not satisfy SSR 96-8p.  Id. at 12-14.  The Court does not agree.

When a medically determinable impairment exists, objective medical evidence must be considered in determining whether disability exists. 20 C.F.R. §§ 404.1529(c)(2) and 416.929(c)(2).  If the claimant's symptoms suggest a greater restriction of function than can be demonstrated by objective evidence alone, consideration will also be given to other factors including: (1) an individual's daily activities; (2) the location, duration, frequency and intensity of the individual's pain or other symptoms; (3) factors that cause and aggravate the symptoms; (4) type, dosage, effectiveness and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms; and (8) any other factors concerning the individual's functional limitations and restrictions due to pain and other symptoms. 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3); SSR 96-7p.  Here, the ALJ considered the objective medical evidence regarding plaintiff's disability as well as Plaintiff's subjective complaints and concluded that although Plaintiff was limited in performing some work-related activities, her combined depression and spinal disorder did not preclude her from performing all substantial gainful activity.  AR 24, 25, 27.  Specifically, although the MRI of Plaintiff's spine revealed disc herniation at C6-C7 with an extruding fragment, AR 161, there were no clinical findings to show functional limitations of a disabling severity.  For example, an

examination by Dr. Lomazow on May 2, 2001, established that there was no sensory loss, atrophy or evidence of cord impingement. Id. at 148-49.  In addition, on May 8, 2001, Plaintiff reported to Dr. Dela Rosa that her neck pain had improved by 50 percent. Id. at 152.  Moreover, when Plaintiff returned to Dr. Lomazow on May 10, 2001,  he noted that although Plaintiff continued to suffer from pain related to the herniated disc, her EMG was "essentially normal." Id. at 144.  Most recently, on December 4, 2002, Dr. Zakavhe reported that despite Plaintiff's complaints, the "physical findings could not justify [Plaintiff's] subjective pain." Id. at 209-210. Specifically, Dr. Zakavhe found that Plaintiff's pinch, grasp, deep reflexes and range of motion in her hips and knees were all normal. Id. at 209-10.   In addition, the ALJ noted that in 2002 Plaintiff reported to Dr. Marks that she walked about one half mile, every other day, and performed most household duties. Id. at 184.

Based upon this medical evidence, the ALJ held that plaintiff retained the RFC to perform a wide range of light work[5].  Specifically, the ALJ found that Plaintiff had the ability to "lift and/or carry twenty pounds occasionally, ten frequently; stand and/or walk for a total of six hours in an eight-hour workday; sit for a total of six hours in and eight-hour workday; climb, balance, kneel, crouch and crawl occasionally; she can engage in occasional cervical flexion and rotation." Id. at 27.  In his opinion, the ALJ explained that his assessment of Plaintiff's RFC was

---

[5]Light work involves lifting no more than 20 pounds at a time with frequent lighting or carrying of objects weighing up to 10 pounds. 20 C.F.R. §§ 404.1567(b) and 416.967(b). Frequent lifting or carrying is defined as an activity that occurs between one-third and two-thirds of the time and requires an individual to be on his or her feet up to two-thirds of a workday.  SSR 83-10.  The full range of light work requires standing or walking, off and on, for approximately 6 hours of an eight-hour workday.  Id. The use of arms and hands to grasp, hold and turn objects is required, but the use of fingers for fine activities is required less frequently than the extent required in sedentary work.  Id. To be considered capable of performing a wide range of light work, a claimant must have the ability to do all of these activities. Moreover, if a claimant is deemed able to do light work, she will also be deemed capable of performing sedentary work unless there are limiting factors such as inability to sit for a long time.

supported by a May 7, 2002, RFC assessment by a State Agency physician who found that Plaintiff was able to lift and/or carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk, and sit (with normal breaks) for a total of six hours in an 8-hour workday.[6]  AR 20; Pl's Let. July 18, 2005, Ex. 7F.   Furthermore, on February 3, 2002, Dr. McLarnon, a second State Agency Medical consultant, reviewed the Physical RFC and found that it was supported by substantial medical evidence.  Id. at 212-13.

Despite this support for the ALJ's finding that Plaintiff's physical impairments would not prevent her from performing light work,  Plaintiff also contends that the ALJ did not properly incorporate Dr. Friedman's findings in determining Plaintiff's RFC.  The Court does not agree. The ALJ discussed in great detail the findings and evaluations of all the medical experts including the Mental RFC that Dr. Friedman performed.  Id. at 21-23. Moreover, the ALJ specifically evaluated these results when he determined that Dr. Friedman's assessment was "inconsistent with a claim of mental impairment that results in total disability."  Id. At 23. Importantly, although Plaintiff's brief cites Dr. Friedman's analysis as stating that her "condition would not permit her to work . . .," Pl. Br. at 13,  Dr. Friedman actually stated that Plaintiff's "mental condition would not prevent her from being able to understand, remember, and carry out simple instructions . . .." AR 219 (emphasis added).  Therefore, Dr Friedman's report is sufficiently explained and is consistent with the ALJ's finding that Plaintiff is able to perform simple, routine unskilled tasks.  For these reasons, the Court finds that the RFC was properly assessed and that there was substantial evidence to support the ALJ's finding that Plaintiff retained the capacity to perform a limited range of light work available in the national economy.

---

[6] See note 4 supra.

17

**2. Whether the Vocational Expert Testimony that the ALJ relied on was flawed**

Next, Plaintiff contends that the ALJ relied on vocational expert testimony based on a flawed hypothetical question. At a disability hearing, if an ALJ poses a hypothetical to a vocational expert, the hypothetical must reflect all of the claimant's impairments that are supported by the record. Ramirez v. Barnhart, 372 F.3d 546, 552 (3d Cir. 2004). Moreover, "great specificity" is required when an ALJ incorporates a claimant's mental or physical limitations into a hypothetical. Id. at 554-55. When the record contains undisputed evidence of specific medical impairments not included in the hypothetical to the vocational expert, the expert's response will not be considered substantial evidence. Burns v. Barnhart, 312 F.3d 113, 123 (3d Cir. 2002). Thus, the ALJ's hypothetical must adequately capture and recite all of the claimant's mental impairments and the limitations caused by those impairments. Ramirez 372 F.3d at 555; Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir. 1987) ("A hypothetical question must reflect *all* of a claimant's impairments that are supported by the record; otherwise the question is deficient and the expert's answer to it cannot be considered substantial evidence."); Podedworny v. Harris, 745 F.2d 210, 218 (3d Cir. 1984) ("While the ALJ may make assumptions when questioning the vocational expert, the vocational expert's testimony will only be considered if the assumptions correctly characterize the claimant's condition.").

Plaintiff argues that the ALJ's hypotheticals were abbreviated, conclusory and failed to properly include limitations found by some of the Agency's experts. Because the ALJ excluded certain limitations, plaintiff contends that the vocational expert could not properly evaluate Plaintiff's RFC. Specifically, Plaintiff argues that although the vocational expert was asked to

18

consider the Mental RFC performed by Dr. Friedman, he was unable to do so because the ALJ

indicated that he considered Dr. Friedman's report to  mean "that the person is unable to do more

than simple routine unskilled tasks." AR 59.  Moreover, according to Plaintiff, the ALJ's

hypothetical did not include various restrictions including Dr. Friedman's finding that Plaintiff

was moderately limited in certain areas.  If the ALJ's hypotheticals had included all the above

findings, Plaintiff contends that the vocational expert would not have responded that plaintiff

could perform jobs in the national economy with success.  Pl's Br. at 17. The Court does not

agree.

     Initially, the Court notes that before the ALJ posed any questions to the vocational expert,

the ALJ asked the expert if he had an opportunity to review Plaintiff's medical records.  AR 52.

The vocational expert testified that he had looked over the file and that he had listened to

Plaintiff's testimony moments before he testified.  Id.  Thus, even if the ALJ's hypothetical failed

to include all of Plaintiff's impairments, this can be remedied by the fact that the expert reviewed

the records prior to the hearing and was present during the hearing and questioning of Plaintiff.

See 4 Social Security Law and Practice (SSLP) § 52:107 (March 2005) ("An ALJ's failure to

include every aspect of a claimant's impairments in the hypothetical questions posed to a

vocational expert can also be remedied by showing that the expert reviewed the claimant's

medical documents and reports prior to the hearing.").

     Moreover, the Court notes that the ALJ did not fail to include Plaintiff's relevant

limitations in his hypotheticals.  According to the Third Circuit, a hypothetical posed by an ALJ

must only reflect the Claimant's impairments that are supported by the record.  See Chrupcala,

829 F.2d at 1276.  Here, although the ALJ did not include all of Plaintiff's alleged limitations,

his questions specifically referred to Plaintiff's limited cervical flexion and rotation as well as several other limitations which had been established in the record.  See AR 52.   Thus, the Court notes that while Plaintiff is correct that the ALJ did not include all of the Plaintiff's alleged impairments in the hypotheticals, the ALJ was not required to include all Plaintiff's impairments because he did not find all of Plaintiff's allegations credible and they were not supported by the record.  AR 27.  Thus, the ALJ properly included information in his hypotheticals that he believed was credible as evidenced by physician reports.  For example, at the hearing, the ALJ asked the vocational expert to:

> assume a person of the same age, education and work background as Ms. Smith, capable of light work, provided it's restricted to occasional postural activity, would not require more than limited cervical flexion or rotation, would not expose the individual to any heights or hazards, nor require the performance of more than simple and routine tasks.  Would that provide support [for] any of Ms. Smith's past work?
>
> AR 52.

Finally, the Court finds that the ALJ's hypotheticals did not omit undisputed evidence of mental impairments contained in the Administrative Record.  Instead, the hypotheticals incorporated Dr. Friedman's findings and directly corresponded to the RFC.  Indeed, the ALJ posed the following hypothetical to the vocational expert: "[T]he mental condition of the claimant would not prevent her from being able to understand, remember and carry out simple instructions, to independently and consistently sustain concentration, persistence and pace, for

two hours at a time during a normal workday/workweek, to interact socially in an appropriate manner in a low contact environment and to adapt to changes in the workplace. Are the jobs you identified consistent with that?"  AR 61.  The Court notes that the ALJ's hypothetical was taken, word for word, from Dr. Friedman's report.[7]  AR 219.  Moreover, the vocational expert responded that the jobs he determined that Plaintiff could perform were consistent with the limitations Dr. Friedman identified as incorporated into the hypothetical.  Specifically, when the ALJ referred the vocational expert to specific parts of Dr. Friedman's reports, the vocational expert affirmed that someone with Plaintiff's impairments could perform the jobs that he had identified.  See AR 61-62.

Thus, the Court notes that the ALJ's hypotheticals properly incorporated Plaintiff's impairments including Dr. Friedman's findings.  Therefore, the Court finds that the vocational expert's testimony could properly be relied upon by the ALJ and could be considered substantial evidence in support of the ALJ's decision.

**3. Whether the ALJ relied on flawed vocational expert testimony or an opinion that violated Social Security Ruling 00-4p.**

Finally, Plaintiff contends that there is a conflict between the vocational expert's testimony that Plaintiff could perform the jobs of office helper, travel clerk and charge account

---

[7] Dr. Friedman's evaluation explains, "[i]n my opinion, the mental condition of the claimant would not prevent her from being able to understand, remember and carry out simple instructions, to independently and consistently sustain concentration, persistence and pace for two hours at a time during a normal workday/workweek, to interact socially in an appropriate manner in a lowe contact environment and to changes in the workplace." AR 219.

clerk[8] and the descriptions of these jobs as set forth in the Dictionary of Occupational Titles

("DOT").  SSR 00-4p requires that in any conflict between the DOT and a vocational expert's

testimony, the conflict must be resolved with sufficient explanation before the Court can rely on

the vocational expert's testimony.  SSR 00-4p.  Specifically, Plaintiff alleges that according to

the DOT, Office Helper is defined as light work, which requires stooping, talking, and hearing

occasionally, and reaching, handling, fingering, and near acuity frequently. DOT 239.567-010.

Travel Clerk is categorized as light work, consisting of constant talking and hearing, and frequent

reaching, handling, and near acuity.  DOT 237.367-018.  Finally, the job of Charge Account

Clerk is categorized as sedentary work that requires frequent talking, hearing, reaching and

handling, and occasional fingering and near acuity.  DOT 205.367-014.  Plaintiff argues that

according to the DOT's definitions, these jobs require frequent reaching and handling, which, in

turn, would require Plaintiff to move her neck very often.  Because the ALJ did not inquire about

this discrepancy between the vocational expert's findings and the DOT job descriptions, the

ALJ's decision violated SSR 00-4p. AR 53.  The Court does not agree.

SSR 00-4p only requires an inquiry from the ALJ when there is a conflict between the

vocational expert's findings and the DOT job descriptions.  Here, Plaintiff has not identified a

conflict between the DOT and the vocational expert's testimony.  As noted above, the DOT's

descriptions are limited to general descriptions of the basic tasks involved in each occupation.

The DOT's descriptions do not specifically address cervical flexion and rotation or any other

specific impairment.  See Id. at 52.  Therefore, there is no conflict between the DOT and the

---

[8]Specifically, the vocational expert testified that Plaintiff would be able to work as an
office helper, DOT Code 239.567-010; information clerk (a.k.a. travel clerk), DOT Code
237.367-018; and charge account clerk, DOT Code 205.367-014.

vocational expert's testimony.  Moreover, in his assessment of Plaintiff's ability to perform work in the national economy, the vocational expert relied both on the DOT definitions as well as Plaintiff's physical and mental limitations.  With all these factors in mind,  the vocational expert noted that there were three jobs that Plaintiff could perform – office helper, travel clerk and charge account clerk.  Thus, the DOT's descriptions of these positions are in harmony with the vocational expert's testimony. For these reasons, this Court finds that none of the identified jobs would require physical demands or educational development beyond Plaintiff's Physical RFC and Mental RFC.  Therefore, SSR 00-4p was not violated and the vocational expert testimony was not flawed.

### III.    CONCLUSION

For the reasons set forth above, the Court find that the ALJ's decision is supported by substantial evidence in the record.  Therefore, the ALJ's decision will be affirmed and Plaintiff's complaint shall be dismissed in its entirety.  An appropriate order shall follow.


Dated: November 3, 2005                    /s/ Freda L. Wolfson
                                           Honorable Freda L. Wolfson
                                           United States District Judge